UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CREDIT SUISSE SECURITIES (USA) LLC,<br><br>          Petitioner,<br><br>    v.<br><br>DARYL ALLEN, DAVID BARNES, CHRISTOPHER BLACK, MICHELE CRITTENDEN, CHRIS FLANAGAN, MICHAEL FLANAGAN, MICHAEL GREEN, FRANK HOGAN, WILLIAM HUTHNANCE, MICHAEL HOOD, DONALD KINSEY, TRAVIS MOSS, MATTHEW PICKETT, JAMES TARDY, and LANGSTON TURNER,<br><br>          Respondents. | Case No. <u>16-cv-3441-PGG</u> |

## PETITION TO COMPEL ARBITRATION PURSUANT TO THE PARTIES' AGREEMENTS AND BAR LITIGATION IN OTHER COURTS OR FORA IN VIOLATION OF THE PARTIES' AGREEMENTS

Petitioner, by its undersigned attorneys, hereby seeks an injunction under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, declaring that Respondents Chris Flanagan, Michael Flanagan, James Tardy, David Barnes, Michele Crittenden, Donald Kinsey, Travis Moss, Matthew Pickett, Francis Hogan, Michael Green, Michael Hood, Daryl Allen, Langston Turner, William Huthnance, and Christopher Black (collectively "Respondents") must arbitrate any potential claims, if any, regarding deferred compensation and employee promissory notes in JAMS or the American Arbitration Association ("AAA"), pursuant to Respondents' signed agreements with Petitioner, and barring Respondents from litigating these claims in any other court or forum. In support of its Petition, Petitioner states as follows:

### The Parties

1.    Petitioner, Credit Suisse Securities (USA) LLC ("Credit Suisse" or "Petitioner"), is a limited liability corporation organized and existing under the laws of the State of Delaware

with its principal place of business at 11 Madison Avenue, New York, New York 10010. Credit Suisse is a wholly owned subsidiary of Credit Suisse (USA), Inc., a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 11 Madison Avenue, New York, New York 10010.

2. Upon information and belief, Respondent Chris Flanagan is a resident and citizen of the State of Texas. Until the time his resignation became effective, Chris Flanagan held the position of Relationship Manager with the corporate title of Director in Credit Suisse's Private Banking USA Group ("Private Banking").

3. Upon information and belief, Respondent Michael Flanagan is a resident and citizen of the State of Texas. Until the time his resignation became effective, Michael Flanagan held the position of Relationship Manager with the corporate title of Director in Private Banking.

4. Upon information and belief, Respondent James "Chip" Tardy ("Tardy") is a resident and citizen of the State of Texas. Until the time his resignation became effective, Tardy held the position of Relationship Manager with the corporate title of Director in Private Banking.

5. Upon information and belief, Respondent David Barnes ("Barnes") is a resident and citizen of the State of Texas. Until the time his resignation became effective, Barnes held the position of Relationship Manager with the corporate title of Managing Director in Private Banking.

6. Upon information and belief, Respondent Michele Crittenden ("Crittenden") is a resident and citizen of the State of Texas. Until the time her resignation became effective, Crittenden held the position of Relationship Manager with the corporate title of Director in Private Banking.

7. Upon information and belief, Respondent Donald Kinsey ("Kinsey") is a resident and citizen of the State of Texas. Until the time his resignation became effective, Kinsey held the position of Relationship Manager with the corporate title of Director in Private Banking.

8. Upon information and belief, Respondent Travis Moss ("Moss") is a resident and citizen of the State of Texas. Until the time his resignation became effective, Moss held the position of Relationship Manager with the corporate title of Vice President in Private Banking.

9. Upon information and belief, Respondent Matthew Pickett ("Pickett") is a resident and citizen of the State of Texas. Until the time his resignation became effective, Pickett held the position of Relationship Manager with the corporate title of Director in Private Banking.

10. Upon information and belief, Respondent Frank Hogan ("Hogan") is a resident and citizen of the State of Texas. Until the time his resignation became effective, Hogan held the position of Relationship Manager with the corporate title of Director in Private Banking.

11. Upon information and belief, Respondent Michael Green ("Green") is a resident and citizen of the State of Texas. Until the time his resignation became effective, Green held the position of Relationship Manager with the corporate title of Director in Private Banking.

12. Upon information and belief, Michael Hood ("Hood") is a resident and citizen of the State of Texas. Until the time of his resignation became effective, Hood held the position of Relationship Manager with the corporate title of Director of Private Banking.

13. Upon information and belief, Daryl Allen ("Allen") is a resident and citizen of the State of Texas. Until the time of his resignation became effective, Allen held the position of Relationship Manager with the corporate title of Director of Private Banking.

14. Upon information and belief, Langston Turner ("Turner") is resident and citizen of the State of Texas. Until the time of his resignation became effective, Turner held the position of Relationship Manager with the corporate title of Director of Private Banking.

15. Upon information and belief, William Huthnance ("Huthnance") is a resident and citizen of the State of Texas. Until the time of his resignation became effective, Huthnance held the position of Relationship Manager with the corporate title of Director of Private Banking.

16. Upon information and belief, Christopher Black ("Black") is a resident and citizen of the State of Texas. Until the time of his resignation became effective, Black held the position of Relationship Manager with the corporate title of Director of Private Banking.

## Jurisdiction and Venue

17. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties in each case, and more than $75,000, exclusive of interest and costs, at stake in each underlying arbitration between the parties.

18. Venue is proper in this district because the arbitration agreement sought to be enforced requires arbitration in New York, New York.

## Factual Allegations

19. Upon information and belief, Respondents are sophisticated financial professionals, each having years of experience in the securities industry. At the time of their resignations from Credit Suisse, Respondents' tenure at Credit Suisse varied from several years to decades at the bank. For example, Tardy had been employed by Credit Suisse for more than twenty years while Respondent Crittenden had been with Credit Suisse for approximately one year. At all times relevant hereto, Respondents were Relationship Managers in the Private Banking division of Credit Suisse's Texas offices, with both Flanagans, Tardy, Crittenden,

4

Kinsey and Pickett working in the Dallas office and Green, Hood, Hogan, Allen, Turner, Huthnance and Black working in the House office.

20.     As Relationship Managers, Respondents serviced many of Credit Suisse's valuable clients and managed many complex and sophisticated accounts. All Respondents held the corporate title of Director, with the exception of Barnes, who was a Credit Suisse Managing Director and Moss, who served as a Vice-President. Respondents' corporate titles reflected their experience and the trust Credit Suisse placed in them.

21.     At all times relevant hereto, Respondents' employment and compensation were governed by various documents including their signed offer letters, the written plans under which they were compensated, and the Credit Suisse United States Employment Handbook (the "Handbook"), which included the Credit Suisse Employment Dispute Resolution Program (the "EDRP") which is appended thereto.

22.     Respondents Hogan, Green, Hood, Allen, Turner, Huthnance and Black resigned from Credit Suisse together on or about November 16, 2015.

23.     Respondents Crittenden, Kinsey, Moss and Pickett resigned together on or about January 21, 2016.

24.     Respondent Barnes resigned from Credit Suisse on or about January 26, 2016.

25.     Respondent Tardy resigned from Credit Suisse on or about February 1, 2016.

26.     Respondents Michael and Chris Flanagan resigned from Credit Suisse on or about March 7, 2016.

*Respondents' Compensation*

27.     Respondents were well compensated at Credit Suisse, including by base salary, commissions, bonus compensation and various awards of deferred compensation.

5

28. All deferred compensation at issue here is governed by the Credit Suisse Group AG Master Share Plan (the "Share Plan"), and various Award Certificates (the "Awards") reflecting awards made thereunder.

29. The Share Plan and the Awards at issue all state, among other things, that any vesting of unvested deferred compensation awards ceases upon an employee's voluntary resignation from Credit Suisse.

30. The Share Plan also states that "[a]ny dispute between the Group and a Participant, including without limitation, any dispute under the Plan or any Award Certificate, shall be finally settled in accordance with the Group's alternative dispute resolution policy applicable to the Participant as in effect from time to time." The Awards at issue explicitly refer back to that Share Plan language in their sections on dispute resolution.

31. At all times relevant hereto, the alternative dispute resolution policy applicable to Respondents was the EDRP, as it was part of the governing employment handbook and specifically agreed to by Respondents as set forth below.

32. Among other things, the EDRP requires that "[a]ll arbitrations under the Program will be conducted" by arbitrators "supplied by JAMS or the American Arbitration Association," at the election of the party initiating the arbitration. Furthermore, the EDRP provides that binding arbitration before one of those two fora will be "an employee's and Credit Suisse's exclusive remedy for resolving an Employment-Related Claim that was mediated unsuccessfully." The EDRP expressly forbids Respondents from pursuing their Employment-Related Claims in any other forum.

33. Despite the clear terms of these agreements, Respondents now seek to bring claims against Credit Suisse for payment of their unvested deferred compensation and employee

6

promissory notes in FINRA arbitration by way of state court actions in Texas (and, potentially, other courts), in violation of the EDRP.

34.     These claims are without merit; but for purposes of this petition, the merits of the underlying claims are not before the Court.

35.     Rather, Credit Suisse here seeks only to enforce the choice of arbitral forum set out in the EDRP.

36.     Thus, the only issue for this Court is the enforceability of the choice of arbitration forum to which Respondents agreed in accepting the EDRP and the benefits that went along with it.

37.     This Court has repeatedly addressed that exact issue, under identical circumstances, and decided it in Credit Suisse's favor; and the Second Circuit recently and unambiguously upheld those decisions, noting that "the EDRP's arbitration-forum provisions are enforceable, and the district court did not err in compelling Employees to dismiss the FINRA arbitration and pursue their claims before JAMS." *Credit Suisse Sec. (USA) LLC v. Tracy*, 812 F.3d 249, 256 (2d Cir. 2016).

38.     Respondents now attempt to end run unambiguous precedent in this circuit by blatantly forum-shopping for declaratory relief in the various state courts in Texas.

*Respondents' Agreements to Abide by Credit Suisse's Employment Dispute Resolution Program*

39.     By accepting the monetary benefits of the Share Plan, and now seeking to bring actions relating to additional benefits thereunder, Respondents have accepted the terms of the Share Plan, including the obligation to resolve disputes by the terms set out therein.

40.     In addition to the Share Plan, which explicitly requires disputes to be addressed under the operative dispute resolution program (here, the EDRP), Respondents repeatedly agreed to resolve disputes with Credit Suisse under the EDRP in multiple enforceable contracts.

41.     For example, at the time of his employment by Credit Suisse in 2012, Chris Flanagan signed and accepted an offer letter dated March 16, 2012 that explicitly stated:

> All United States employees are subject to the Credit Suisse United States Employment Dispute Resolution Program, as amended from time to time (the "Program"). The Program provides that all employment-related claims, including all statutory claims, an employee may at any time have are to be resolved through a three-step process consisting of an internal grievance procedure; mediation before an independent service provider; and (in the case in which a claim is not resolved through the first two steps) binding arbitration before one of two independent service providers in accordance with its arbitration rules. Any disputes arising hereunder shall be resolved in accordance with such Program.

42.     Virtually identical provisions are contained in the offer letters of most of the Respondents.

43.     On May 8, 2012, in connection with the commencement of his employment, Chris Flanagan also signed a one-page "Agreement to Use Employment Dispute Resolution Program Procedures" in which he again agreed to be bound by the EDRP. The majority of Respondents signed virtually identical agreements upon starting at Credit Suisse.

44.     In addition, as U.S. employees of Credit Suisse, each Respondent was bound by the provisions of the Handbook, which specifically states, in the section on "Workplace Rules:"

> Credit Suisse has adopted an Employment Dispute Resolution Program that provides that all employment-related claims a U.S.-based employee may at any time have, including any arising in connection with his or her application for employment, employment or termination of employment, must be resolved through a three-step process consisting of the internal grievance procedure described above; mediation before an outside service

8

provider; and if the claim is not resolved through the first two steps, binding arbitration before one of two outside service providers in accordance with the service provider's arbitration rules as then in effect. . . A copy of a Statement of Policy describing the Employment Dispute Resolution Program has been provided to every U.S. employee and is given to every new U.S. employee. A copy is also included in this Handbook, as Appendix A.

45.     As noted, a copy of the EDRP was included with the Handbook and provided to all U.S. employees, including all Respondents.

46.     By continuing to work at Credit Suisse for years, and by accepting the very substantial compensation and benefits that flowed from their employment year after year, Respondents agreed to be bound by the terms and conditions of employment set out in the Handbook.

47.     If this were not enough, however, Respondents also explicitly agreed, year after year (through an annual electronic compliance program that required them to electronically acknowledge and agree), to be bound by the Handbook and, specifically, that they were aware of and agreed to be bound by the provisions of the applicable employment dispute resolution program, the EDRP.

48.     Respondents were required to confirm their acceptance of these terms annually, which they did, as evidenced by individualized employee certificates and internal Credit Suisse records.

49.     Thus, through their agreements (written and electronic), their employment, and their acceptance of substantial awards under the Share Plan, Respondents agreed to be bound by the EDRP.

50.     The EDRP covers "Employment-Related Claims," which are defined as "[a]ll present and future claims against Credit Suisse by an employee, and all present and future claims

9

against an employee by Credit Suisse . . . if (i) they relate to or arise from the employee's application for employment, employment, or termination (including manner of termination) of employment, or from events occurring after termination but relating to one of the foregoing, and (ii) they assert the violation or infringement of a legally protected right." The EDRP explicitly governs any claim brought under the Share Plan.

51.     Under the terms of the EDRP (the "EDRP Procedures"), if a current or former employee seeks to assert Employment-Related Claims against Credit Suisse, he or she must follow a three-step procedure: (1) the employee must undertake the internal Credit Suisse grievance procedure by "bring[ing] the problem to the attention of an appropriate person at Credit Suisse"; (2) if the employee "believes the dispute was not satisfactorily resolved through [the internal grievance] procedure, he or she may elect to proceed" to mediation "by a neutral third party"; and (3) if "an employee or Credit Suisse has made an effort to resolve . . . a claim through mediation . . . but the mediation proceedings did not result in a resolution, he or she or it may proceed to . . . final and binding arbitration." The EDRP Procedures also apply to any Employment-Related Claim Credit Suisse asserts against a current or former employee.

52.     The EDRP requires that "[a]ll arbitrations under the Program will be conducted" by arbitrators "supplied by JAMS or the American Arbitration Association," at the election of the party initiating the arbitration. Furthermore, the Procedures provide that binding arbitration before one of those two fora will be "an employee's and Credit Suisse's exclusive remedy for resolving an Employment-Related Claim that was mediated unsuccessfully." Moreover, the EDRP Procedures expressly forbid Respondents from pursuing their Employment-Related Claims in any other forum.

53. The EDRP requires that "[a]ny mediation or arbitration will be held in the New York City metropolitan area or, at the request of the party initiating the proceeding and with the consent of the other party, in the location of the Credit Suisse office where the employee applied for a position or works or worked when the complained of action or actions took place." Credit Suisse has not consented to arbitration of this matter in any other venue.

*<u>Respondents Resigned from Credit Suisse, Immediately Began Working for Competitors, and Purport to Commence In The Future An Arbitration in FINRA, In Violation of the EDRP</u>*

54. On or about November 16, 2015, Respondents Hogan, Green, Hood, Allen, Turner, Huthnance and Black resigned together from Credit Suisse and immediately began working for UBS Financial Services Inc.

55. On or about January 21, 2016, Respondents Crittenden, Kinsey, Moss and Pickett resigned together and immediately joined competitor Stifel, Nicolaus & Company.

56. On or about March 7, 2016, Respondents Michael and Chris Flanagan resigned together from Credit Suisse and immediately began working for Merrill Lynch, a competitor of Credit Suisse. Respondent David Barnes resigned from Credit Suisse on or about January 26, 2016 and immediately began working with another competitor, UBS Financial Services Inc. Respondent Tardy resigned from Credit Suisse on or about February 1, 2016 and joined competitor RGT Wealth Advisors.

57. As a result of their resignations, Respondents were not entitled to the unvested balance of certain Awards made under the Share Plan.

58. Upon information and belief, Respondents contest this determination, and seek declaratory judgment in various state courts in Texas that the dispute over Respondents' forfeited unvested Awards must be arbitrated exclusively before FINRA, in a purported arbitration to be filed on some unspecified future date.

59. On May 9, 2016, Credit Suisse, acting pursuant to Step 2 of the EDRP, initiated mediations against Respondents to attempt to resolve the issues set out in the Respondents' filing. In the event those mediations are not successful, the claims will have to be arbitrated in JAMS or the AAA in New York, pursuant to the terms of the EDRP.

60. The purported claims Respondents seek to arbitrate in FINRA are all Employment-Related Claims, as they arise out of the employment relationship and seek payment of amounts under the Share Plan, which are explicitly governed by the EDRP.

61. These Employment-Related Claims must be arbitrated before JAMS or AAA, and Respondents' purported future initiation of FINRA proceedings is a violation of the parties' written agreements.

## PRAYER FOR RELIEF

62. The parties' agreements to arbitrate Employment-Related Claims pursuant to the procedures set forth in the EDRP are enforceable by this Court pursuant to the Federal Arbitration Act, 9 US.C. § 1, *et seq.*, which specifically authorizes this Court, upon this Petition, to enter an Order directing that arbitration proceed in the manner provided for in the arbitration agreement. *See* 9 U.S.C. § 4.

63. The parties' agreements to arbitrate Employment-Related Claims pursuant to the procedures set forth in the EDRP are also enforceable by this Court pursuant to New York C.P.L.R. § 7503, which authorizes this Court, sitting in diversity, to enforce an agreement to arbitrate through the issuance of an Order compelling arbitration in the manner specified in the agreement.

WHEREFORE, Petitioner Credit Suisse requests that the Court enter an injunction:

A. Directing that Respondents must arbitrate any potential claims, if any, regarding deferred compensation and employee promissory notes in JAMS or the American Arbitration Association, pursuant to Respondents' signed agreements with Petitioner;

B. Barring Respondents from litigating any potential Employment claims in any other court or forum; and

C. Awarding Petitioner such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 9, 2016

        DEWEY PEGNO & KRAMARSKY LLP

        _____
        Stephen M. Kramarsky
        Ariel P. Cannon
        777 Third Avenue, 37th Floor
        New York, NY 10017
        (212) 943-9000

        CREDIT SUISSE SECURITIES (USA) LLC
        Alexander C.B. Barnard
        11 Madison Avenue
        New York, NY 10010
        (212) 538-6273

        *Attorneys for Credit Suisse Securities (USA) LLC*